UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------X
                                :

ANNETTE DELORENZO,               :
                                :

                    Plaintiff,    :

                                :        15-CV-2506 (VSB)

       - against -          :

                                :      __MEMORANDUM & OPINION__

RICKETTS & ASSOCIATES, LTD., et al.,  :

                                :

                Defendants.  :

                                :

--------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/25/2017

Appearances:

Vernon Richard Johnson
Johnson Law PLC
Detroit, Michigan
*Counsel for Plaintiff*

Jacob Aronauer
The Law Offices of Jacob Aronauer
New York, New York
*Counsel for Defendants Ricketts and Associates, Ltd.*
*and Anacaona Boutique Hotel*

Kenneth G. Gerard
Kenneth G. Gerard, Esq.
New York, New York

John J. Doody
Lewis Brisbois Bisgaard & Smith LLP
New York, New York
*Counsel for Defendants Viceroy Hotel Group and*
*Viceroy Anguilla*

VERNON S. BRODERICK, United States District Judge:

       Plaintiff Annette Amina DeLorenzo ("Plaintiff") brought this diversity action based on an

alleged sexual assault that occurred while she vacationed in Anguilla, British West Indies.

Before me are the motions to dismiss under Federal Rule of Civil Procedure 12(b)(2) brought by

the Anacaona Boutique Hotel and Ricketts & Associates, Ltd. (the "Ricketts Defendants"), (Doc. 41),[1] and the Viceroy Anguilla and Viceroy Hotel Group (the "Viceroy Defendants"), (Doc. 51), (collectively "Defendants"). The Viceroy Defendants also argue in the alternative that they are not liable under the theory of respondeat superior, and the Ricketts Defendants argue that the case against them should be dismissed on forum non conveniens grounds. Because I find that Plaintiff has not proffered facts sufficient to support personal jurisdiction in this case as to any Defendants, the motions to dismiss are GRANTED with leave for Plaintiff to refile in a court having personal jurisdiction over Defendants.

## I. __Background__[2]

### A. *The Events in Anguilla*

Plaintiff alleges that while she vacationed on the island of Anguilla at the Anacaona Boutique Hotel (the "Anacaona"), Remy Minette—an employee of the Viceroy Anguilla, the Anacaona's neighboring hotel, at the time—sexually assaulted her in her hotel room. (*See*

---

[1] Although the Ricketts Defendants title their motion as one for "summary judgment," they otherwise move under Rule 12(b)(2), do not include a Local Rule 56.1 statement, do not refer to Rule 56, and generally cite case law applying Rule 12(b)(2). (*See generally* Ricketts Defs.' Mem.) As such, and in light of the fact that a court may still consider matters outside of the pleadings when ruling on a Rule 12(b)(2) motion, I will treat the Ricketts Defendants' motion as one made under Rule 12(b)(2). *See Brown v. Grand Hotel Eden*, No. 00 Civ. 7346 (NRB), 2003 WL 21496756, at *3 (S.D.N.Y. June 30, 2003) (choosing to construe the defendant's motion as one brought under Rule 12(b)(2) where the plaintiffs disputed whether the defendant had filed a Rule 56 motion for summary judgment or a Rule 12(b)(2) motion to dismiss). "Ricketts Defs.' Mem." refers to Ricketts and Associates, Ltd. and Anacaona Boutique Hotel's Memorandum of Law in Support of their Motion for Summary Judgment on Grounds of Lack of Personal Jurisdiction Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure and Forum Non Conveniens. (Doc. 46.)

[2] The following factual summary is drawn from the allegations of the Complaint, the information gleaned from the jurisdictional discovery conducted by the parties, evidence introduced by Plaintiff, and certain sworn assertions. I assume the facts alleged in the Complaint to be true for purposes of these motions, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002), except that I note that, given that Plaintiff was granted jurisdictional discovery, her "prima facie showing [of jurisdiction] must be factually supported," *Trisvan v. Heyman*, No. 16-CV-84 (MKB), 2017 WL 1133344, at *2 (E.D.N.Y. Mar. 24, 2017) (citing *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013)). My references to the Complaint's allegations should not be construed as a finding as to their veracity, and I make no such findings.

*generally* Compl.)[3]

After reading favorable reviews in a New York City-based publication targeted at American travelers, Plaintiff booked her stay at the Anacaona on January 10, 2013 by accessing the hotel's website from her office in Manhattan. (*See id.* ¶¶ 9, 10, 12.) On February 24, 2013 at approximately 11:30 a.m., Minette approached Plaintiff and her traveling companion while they were on the beach near the Anacaona's beach bar, known as the D'Sand Pit. (*Id.* ¶¶ 14–16.) When Plaintiff asked whether they could order food from him even though they were not staying at the Viceroy, Minette responded that they were "Viceroy guests now!" (*Id.* ¶ 16.) Minette then offered to take them on a tour of the Viceroy facilities. (*Id.* ¶ 17.)

The tour eventually led to the Sunset Bar at the Viceroy, at which point Minette offered Plaintiff and her companion a drink. (*Id.* ¶ 18.) Plaintiff requested a gin and tonic, and "[a]fter some time," Minette handed Plaintiff the requested beverage. (*Id.*) Plaintiff and her companion then went to the pool near the Sunset Bar, and Plaintiff began quickly exhibiting signs of impairment, leading Plaintiff to conclude—and inform an Anacaona employee—that she had been drugged. (*Id.* ¶¶ 20–22.) Minette, the Anacaona employee, and Plaintiff's companion subsequently drove Plaintiff back to the Anacaona and took her to her room, where she was left alone. (*Id.* ¶¶ 21–23.) A few moments later, under the false pretense of bringing her food, Minette came into her room by accessing it through a faulty door lock on the hotel room door, and sexually assaulted her. (*Id.* ¶¶ 24–26.)

### B.      *The Viceroy Defendants*

Plaintiff claims that the Viceroy Defendants are subject to jurisdiction in the Southern District of New York based on their "interactive website, advertising, marketing, solicitation of

---

[3] "Compl." refers to the Complaint and Jury Demand, filed on April 2, 2015 ("Complaint"). (Doc. 1.)

business, and in any other manners learned of in the course of discovery," and that Defendant Viceroy Hotel Group is also subject to jurisdiction because of its alleged hotel properties in New York. (*Id.* ¶¶ 4–5.)

Defendant Viceroy Hotel Group is registered in California with its principal office in Los Angeles, California, and Defendant Viceroy Anguilla is located in Anguilla and has an office in Connecticut. (Pl.'s Viceroy Opp., Ex. D, Interrogatory No. 13; *see also* Compl. ¶¶ 4, 5.)[4] The corporate owner of the Viceroy Anguilla is SOF-VIII-Hotel II Anguilla Holdings, L.L.C., which was formed in Delaware and is registered to do business in Florida and Anguilla. (Pl.'s Viceroy Opp., Ex. D, Interrogatory Nos. 13, 14.) The officers of SOF-VIII-Hotel II Anguilla Holdings, L.L.C. are Jerome Silvey and Roy Shanholtz. (*Id.*, Interrogatory No. 14.)

Plaintiff has not averred facts demonstrating that the Viceroy Defendants have an office, bank account, property, affiliated company, or agent in New York, nor has she proffered facts showing that they are registered to do business in New York. (*See* Viceroy Defs.' Mem. ¶ 32; Viceroy Defs.' Reply 6.)[5] Although a Viceroy-branded hotel exists in New York, Plaintiff has acknowledged the Viceroy Defendants' statement that they have no ownership interest in the Viceroy New York, and instead complains that she has not had the ability to depose the corporate representatives of the various entities. (*See* Pl.'s Viceroy Opp. 10.) The in-house employees of the Viceroy Defendants who do public relations, marketing, advertising, and sales are not located in New York, but rather are located in California, Florida, and locations outside of the United States. (Pl.'s Viceroy Opp., Ex. D, Interrogatory Nos. 2 & 3.) Similarly, the

[4] "Pl.'s Viceroy Opp." refers to Plaintiff's Response to Defendants' Viceroy Hotel Group and Viceroy Anguilla's Motion to Dismiss. (Doc. 55.) "Ex. D" refers to Defendants' Viceroy Hotel Group and Viceroy Anguilla Response to Plaintiff's First Jurisdiction Discovery Requests, attached as exhibit D to Plaintiff's opposition. (Doc. 55-5.)

[5] "Viceroy Defs.' Mem." refers to the Memorandum of Law in Support of Defendants' Viceroy Motion to Dismiss the Complaint. (Doc. 57.) "Viceroy Defs.' Reply" refers to the Memorandum of Law in Reply to Plaintiff's Opposition and In Further Support of Defendants' Viceroy Motion to Dismiss the Complaint. (Doc. 61.)

outside sales firm of the Viceroy Defendants is located in Los Angeles, California. (*Id.*, Interrogatory No. 3.) However, the Viceroy Defendants use LFB Media Group, located in New York City, to "create, maintain and/or design all software, websites and/or on-line booking programs, accessible to the general public." (*Id.*, Interrogatory No. 1.) Finally, the Viceroy Defendants have a group insurance policy issued by an insurance company located in New York. (Gerard Aff., Ex. E (Rule 26 Disclosures).)[6]

All Viceroy-branded hotels share a website, through which the general public can make reservations. (Pl.'s Viceroy Opp., Ex. D, Interrogatory No. 12.) The Viceroy brand is also accessible to the general public on numerous websites, including Trip Advisor, Expedia, Travelocity, Facebook, P interest, Google, LinkedIn, Instagram, and YouTube. (Pl.'s Viceroy Opp., Ex. D, Interrogatory No. 6.) However, the Viceroy Defendants represented that they were unable to calculate the number of reservations booked by guests from New York, nor did they have a way to calculate the revenue generated from New York guests. (*Id.*, Interrogatory Nos. 4, 5.) Similarly, the Viceroy Defendants have no method to calculate the number of New Yorkers contacted through email or first class mail. (*Id.*, Interrogatory No. 17.)

### C. *The Ricketts Defendants*

Plaintiff claims that the Ricketts Defendants are subject to jurisdiction in the Southern District of New York because of their use of an "interactive website, advertising, marketing, solicitation of business and in any other manners learned of in the course of discovery." (Compl. ¶ 2.)

Defendant Ricketts & Associates owns and operates the Anacaona, and is located,

---

[6] "Gerard Aff." refers to Kenneth G. Gerard's Affirmation in Support of Motion to Dismiss the Complaint for Lack of Jurisdiction and Failure to State a Cause of Action. (Doc. 56.)

incorporated, licensed, registered, and has its principal place of business in Anguilla.  (Aronauer Decl., Ex. D, Interrogatory No. 13; Ricketts Decl. ¶¶ 5–6; Compl. ¶¶ 2, 3.)[7]  Ricketts & Associates is not licensed or authorized to do business in New York, and has no office, employees, or bank accounts in New York.  (Ricketts Decl. ¶¶ 7–10.)  In fact, Ricketts & Associates does not conduct any business-related activity outside of Anguilla.  (*Id.* ¶ 11.)  Ricketts & Associates maintains an online tour booking service on a website, which can be accessed anywhere in the world.  (*Id.* ¶ 12.)

Similarly, the Anacaona is located in Anguilla.  (Compl. ¶ 3.)  The Anacaona provides an online tour booking service on the hotel's website and an online reservation system, both of which are accessible anywhere in the world.  (Ricketts Decl. ¶¶ 17, 18.)  In 2015, 12.8 percent of the Anacaona's reservations were from New York, 78.8 percent from the other forty-nine states, and 8.4 percent from outside of the United States.  (Aronauer Decl., Ex. D, Interrogatory No. 4.)  However, the Ricketts Defendants did not divulge the percentage of revenue derived from New York guests, explaining that it would be "virtually impossible" to obtain such information.  (Aronauer Decl., Ex. D, Interrogatory No. 5.)

In 2013, the Ricketts Defendants contracted with Very Special Places/Murano PR, a public relations company registered in New York.  (*Id.*, Interrogatory Nos. 1, 2, 3, 7.)  The Ricketts Defendants also entered into a contract with Cyndie Miller Aird of Miller Aird for sales and marketing; Miller Aird is registered in Connecticut.  (*Id.*, Interrogatory Nos. 1, 2, 3.)  The target audience for the public relations company was "everyone who will listen but with an emphasis on travelers in the Northeast United States plus the Atlantic Coast states, the Midwest

---

[7] "Aronauer Decl." refers to the Declaration of Jacob Aronauer, submitted in support of the Rickett Defendants' motion.  (Doc. 45.)  "Ricketts Decl." refers to the Declaration of Robin Ricketts, submitted in support of the Rickett Defendants' motion.  (Doc. 47.)

states, Texas and Eastern Canada." (*Id.* at 45.)[8] The Ricketts Defendants do not control how Very Special Places/Murano PR or Miller Aird provide their public relations or their sales and marketing services, respectively, on behalf of the Ricketts Defendants. (Ricketts Decl. ¶¶ 13–14.) In addition to any advertising done by the public relations firm, the Ricketts Defendants do a minimal amount of advertising on Trip Advisor that is not specifically directed toward New York. (Aronauer Decl., Ex. D, Interrogatory Nos. 6, 9, 18.) Furthermore, the Ricketts Defendants send mailings to either repeat guests or potential guests who request information from the hotel. (*Id.*, Doc. Request No. 5.)

Although it is not clear how the Anacaona came to be featured on specific media, the Anacaona was featured on an online publication from Travel and Leisure, a New York-based publication; the ABC News website, which is a New York-based television network; and the Today Show, which is filmed in New York and broadcast on NBC, a New York-based television network. (Pl.'s Ricketts Opp., Exs. O, P.)[9] These media outlets featured the Anacaona along with other hotels. (*See id.*, Exs. O, P.)[10]

The Ricketts Defendants also used Frank Pierce, an independent contractor for Worldwide Sales and Marketing, during the relevant time period. (Pierce Reply Decl. ¶ 2.)[11] Pierce did not receive "health insurance, vacation days, sick days or a full time salary" from the

---

[8] The Aronauer Declaration attaches various exhibits and also attaches certain documents for which there are no clear exhibit designations. For ease of reference, the page numbers cited to are those given by the ECF.

[9] "Pl.'s Ricketts Opp." refers to Plaintiff's Response to Defendants Ricketts and Associates, Ltd. and Anacaona Boutique Hotel's Motion for Summary Judgment. (Doc. 50.)

[10] The screenshot attached as Exhibit P to the Ricketts Defendants' opposition is of the Anacaona's webpage, which includes an active link to the press release. *See* Anacaona Boutique Hotel, Press & Media Releases, http://www.anacaonahotel.com/PressAndMediaReleases.html (last visited Sept. 11, 2017); Today Show, *Summer Getaways: Splurge or Steal?*, https://www.today.com/money/summer-getaways-splurge-or-steal-1C9875174 (last visited Sept. 11, 2017).

[11] "Pierce Reply Decl." refers to the Declaration of Frank Pierce submitted in support of the Rickett Defendants' motion. (Doc. 66.)

Anacaona.  (*Id.* ¶ 3.)  Additionally, during the time period that Pierce was providing sales and marketing services to the Anacaona, he also provided these services to other hotels.  (*Id.* ¶¶ 3, 5.)  Also during that time period, Pierce did not reside in New York.  (*Id.* ¶ 7.)  Pierce's work for the Anacaona covered Europe, Canada, South America, and the United States, including the tristate area, Boston, and other areas throughout the United States.  (*Id.* ¶ 5.)  While working with the Anacaona, Pierce attended travel shows in New York and Washington, D.C. as well as in other locations in the United States.  (Pl.'s Ricketts Opp., Ex. G; Pierce Reply Decl. ¶¶ 3, 5.)  Pierce also was listed as the contact person for the Anacaona in an article run by Travel Agent Magazine, a New York-based trade magazine, and appeared in a photograph publicizing a television show on WeTV, a network based in New York, that did not mention the Anacaona. (Pl.'s Ricketts Opp., Exs. I, J.)

## II.     Procedural History

Plaintiff began this action on April 2, 2015 by bringing her Complaint against the Defendants for negligence, gross negligence, and/or willful and wanton misconduct, as well as negligent infliction of emotional distress.  (Doc. 1.)  On July 15, 2015, the Viceroy Defendants filed their answer, raising lack of personal jurisdiction as an affirmative defense and also asserting crossclaims against the Rickett Defendants.  (Doc. 10.)  After twice seeking an extension of time to respond to the Complaint, (Docs. 7, 12), and also requesting an extension of time to respond to the Viceroy Defendants' crossclaims, (Doc. 15), the Rickett Defendants filed a motion to dismiss and supporting documents, which I struck from the record on August 18, 2015 for failure to follow my Individual Rules, (Doc. 23).  In my Order striking the motion, I stated that the previously set August 27, 2015 initial pretrial conference would now serve as a pre-motion conference to address the substance of the arguments made by the Ricketts

Defendants.  (*Id.*)

On August 21, 2015, the Rickett Defendants filed a pre-motion letter, (Doc. 25), and on August 24, 2015, Plaintiff filed an initial report and response to the pre-motion letter, (Doc. 26). On August 27, 2015, I held the pre-motion conference, during which I decided that the anticipated motions warranted jurisdictional discovery.  I instructed the parties to propose a schedule for jurisdictional discovery and briefing.  The parties submitted their proposed schedule on September 16, 2015, (Doc. 28), and I granted their proposal on September 17, 2015, (Doc. 29).

However, the Ricketts Defendants thereafter moved for an extension of time to complete jurisdictional discovery, and I granted their request on November 16, 2015.  (Doc. 34.)  They similarly moved for an extension of time to submit their motion and again, I granted their request.  (Doc. 36.)  The Rickett Defendants successfully filed their motion for summary judgment on January 19, 2016, (Doc. 41), and accompanying papers on January 22, 2016, (Docs. 45–47).  After requesting an extension of time, (*see* Doc. 49), Plaintiff submitted her response on February 16, 2016, (Doc. 50).  The Rickett Defendants similarly requested an extension to file their reply, which I granted.  (Doc. 60.)  In accordance with the revised deadline, the Rickett Defendants filed their reply on March 1, 2016, (Doc. 61), and filed it again on March 3, 2016, along with reply affidavits, (Docs. 65–67.)

Meanwhile, the Viceroy Defendants attempted to file their motion to dismiss on December 30, 2015, (Doc. 37), but the filing was deemed deficient and had to be refiled on February 16, 2016, (Doc. 51).  The accompanying papers to the Viceroy Defendants' motion to dismiss were also deemed deficient and only successfully filed on February 18, 2016.  (Docs. 56–57.)  On February 17, 2016, Plaintiff filed her response, (Doc. 55), and on March 1, 2016, the

Viceroy Defendants filed their reply, (Doc. 61).

### III.  Legal Standards

#### A.  *Federal Rule of Civil Procedure 12(b)(2)*

"A plaintiff opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction has the burden of establishing that the court has jurisdiction over the defendant." *BHC Interim Funding, LP v. Bracewell & Patterson, LLP*, No. 02 Civ. 4625 (LTS)(HBP), 2003 WL 21467544, at *1 (S.D.N.Y. June 25, 2003) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)).  Absent a "full-blown evidentiary hearing" on such a motion, a plaintiff "need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials."  *Levans v. Delta Airlines, Inc.*, 988 F. Supp. 2d 330, 334 (E.D.N.Y. 2013) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Schultz v. Safra Nat. Bank of N.Y.*, 377 F. App'x 101, 102 (2d Cir. 2010) (summary order).  Where, however, jurisdictional discovery has been completed but no evidentiary hearing has been held, the prima facie case "'must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction.'"  *Brown*, 2003 WL 21496756, at *3 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  Furthermore, although pleadings and affidavits are construed in the light most favorable to the plaintiff, "conclusory non-fact-specific jurisdictional allegations or a legal conclusion couched as a factual allegation will not establish a *prima facie* showing of jurisdiction."  *Bracken v. MH Pillars Inc.*, No. 15-CV-7302 (RA), 2016 WL 7496735, at *2 (S.D.N.Y. Dec. 29, 2016) (*citing SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015)).

#### B.  *Personal Jurisdiction*

In diversity cases such as this one, personal jurisdiction over a defendant "is governed by

the law of the forum state . . . so long as the district court's exercise of jurisdiction comports with the requirements of due process." *Bracken*, 2016 WL 7496735, at *2 (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006)). In New York, general jurisdiction is addressed under New York Civil Practice Law and Rules ("CPLR") § 301, and specific jurisdiction under CPLR § 302.

Under CPLR § 301, "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." To be subject to jurisdiction under this provision, a non-resident defendant must be "doing business" within New York, meaning that the defendant must be "engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction." *J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 547 (S.D.N.Y. 2001) (quoting *McGowan v. Smith*, 437 N.Y.S.2d 643 (1981)); *see also Havlish v. Royal Dutch Shell PLC*, No. 13 Civ. 7074 GBD, 2014 WL 4828654, at *2 (S.D.N.Y. Sept. 24, 2014) (quoting *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990)). This requires that the defendant be present in New York "not occasionally or casually, but with a fair measure of permanence and continuity." *J.L.B. Equities, Inc.*, 131 F. Supp. 2d at 548 (quoting *Landoil Res. Corp.*, 918 F.2d at 1043). In evaluating whether a defendant is "doing business," New York courts focus on factors, including, but not limited to, "the existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; and the presence of employees or agents in New York." *Schultz*, 377 F. App'x at 102 (quoting *Landoil Res. Corp.*, 91 F.2d at 1043). "Solicitation alone will not ordinarily show that a defendant is 'doing business' in New York, but where combined with evidence that the defendant 'engages in other activities of substance in the state, then personal jurisdiction may properly be found to

exist.'" *Id.* at 102–03 (quoting *Landoil Res. Corp.*, 91 F.2d at 1043–44).

Since the law in New York establishes the boundaries of jurisdiction beyond mere reference to the limits of due process, a plaintiff must also demonstrate that general jurisdiction over the defendant would satisfy due process principles. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 244 (2d Cir. 2007) ("The reach of New York's long-arm statute, by contrast, does not coincide with the limits of the Due Process Clause. Analysis under it therefore may involve two separate inquiries, one statutory and one constitutional."). A corporation can "be subject to general jurisdiction in a state only where its contacts are so 'continuous and systematic' . . . that it is 'essentially at home' in that state." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 761–62 (2014)). This level of contact is beyond the "continuous and systematic" language contemplated in *International ShoeCo. v. State of Washington, Office of Unemployment Compl. & Placement*, 326 U.S. 310 (1945) with regard to specific jurisdiction. *See Daimler*, 134 S. Ct. at 761. "Aside from 'an exceptional case' . . . a corporation is at home (and thus subject to general jurisdiction, consistent with due process) only in a state that is the company's formal place of incorporation or its principal place of business." *Gucci Am., Inc.*, 768 F.3d at 135 (quoting *Daimler,* 134 S. Ct. at 761 & n.19). "Transacting business in a state does not make a company at home there." *Bracken*, 2016 WL 7496735, at *3 (citing *Daimler*, 134 S. Ct. at 761); *see also Daimler*, 134 S. Ct. 746 (contacts of defendant's in-state subsidiary to California, which consisted of sizable sales of vehicles, were insufficient to warrant exercise of general jurisdiction).

Under CPLR § 302(a)(1), "a court may exercise personal jurisdiction over a defendant if it (1) 'transacts any business' in New York *and* (2) the plaintiff's cause of action arises from the business transaction." *Schultz*, 377 F. App'x at 103 (citation omitted) (emphasis in original); *see*

*also Hinsch v. Outrigger Hotels Hawaii*, 153 F. Supp. 2d 209, 212 (E.D.N.Y. 2001) ("In such cases [where jurisdiction is based on transaction of business within the state], however, personal jurisdiction may be exercised only as to causes of action that arise from the transaction of business relied upon.").  "A defendant transacts business if he has 'purposely availed himself of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws.'" *Reich v. Lopez*, 38 F. Supp. 3d 436, 457 (S.D.N.Y. 2014) (quoting *D.H. Blair & Co.*, 462 F.3d at 104).  "A suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Bracken*, 2016 WL 7496735, at *3 (quoting *Best Van Lines, Inc.*, 490 F.3d at 246).

### IV.    <u>Application</u>

 Although Plaintiff's Complaint only asserts specific jurisdiction under CPLR § 302, she claims in her opposition to Defendants' motions that Defendants are also subject to general jurisdiction under CPLR § 301.  Therefore, I will address Plaintiff's arguments with regard to both general and specific jurisdiction.  *See Skrodzki v. Marcello*, 810 F. Supp. 2d 501, 508 (E.D.N.Y. 2011) (addressing theories of jurisdiction under both § 301 and § 302 where the plaintiff did "not specify a jurisdictional theory in the complaint" but rather claimed in the opposition that there was personal jurisdiction over defendants pursuant to both sections).

### A.    *Personal Jurisdiction Over the Viceroy Defendants*

### 1.  General Jurisdiction

Plaintiff relies on the fact that the Viceroy Defendants solicited business in New York while at the same time maintaining a "highly interactive website, which can be utilized in New York to make hotel reservations without the involvement of a third party [and] . . . presumably is

to Defendants' benefit," (Pl.'s Viceroy Opp. 8), to demonstrate that the Viceroy Defendants are "doing business" for the purposes of general jurisdiction. Plaintiff argues that these facts support a finding of general jurisdiction on the solicitation plus legal theory. (*See id.*) Additionally, Plaintiff notes that New York is an important target for the "Anguillan Tourist Industry" as a whole. (*Id.* at 10; *see also* Compl. ¶¶ 4–5.) Finally, Plaintiff argues that the Viceroy Defendants failed to "properly respond" to the discovery requests[12] and states that "[a]ssuming that its Vice President is doing work on behalf of the Viceroy Anguilla in New York, there is adequate reason to believe that Defendants' contacts with this forum satisfy the 'solicitation plus' test for general jurisdiction."[13] (Pl.'s Viceroy Opp. 10–11.)

Under the "solicitation plus" theory, "'if solicitation is substantial and continuous, and defendant engages in other activities of substance in the state, then personal jurisdiction may be found to exist.'" *Overseas Media, Inc. v. Skvortsov*, 407 F. Supp. 2d 563, 569 (S.D.N.Y. 2006), *aff'd,* 277 F. App'x 92 (2d Cir. 2008) (citation omitted). Plaintiff has not shown any "substantial and continuous" solicitation, nor has she presented any facts that would otherwise demonstrate

---

[12] Plaintiff argues that at a minimum, full discovery is required to ascertain the nature of the Viceroy Defendants' corporate relationships and to allow Plaintiff the chance to get the discovery the Viceroy Defendants have resisted providing. (Pl.'s Viceroy Opp. 11.) However, Plaintiff had a full and fair opportunity to seek discovery and raise any discovery disputes with me by bringing such disputes to my attention consistent with my Individual Rules; this was not done. Regardless, given both the unavailability of certain evidence and the facts already established, further discovery would not change the outcome. Moreover, I would deny Plaintiff's request to reopen discovery because I find that there is no basis to do so. *See Best Van Lines, Inc.*, 490 F.3d at 255 (district court "acted well within its discretion in declining to permit discovery because the plaintiff had not made out a prima facie case for jurisdiction"); *Bracken*, 2016 WL 7496735, at *5 ("At the jurisdictional stage, district courts enjoy broad discretion in deciding whether to order discovery" and [b]efore allowing jurisdictional discovery, courts look for 'a threshold showing that there is some basis for the assertion of jurisdiction'" (citations omitted)).

[13] The assumption here is in reference to a LinkedIn profile that indicates that Roy Shanholtz, an officer of the Viceroy Anguilla's owner, resided in the "Greater NYC area." (Pl.'s Viceroy Opp. 5, 10.) To begin with, the "Greater NYC area" does not necessarily indicate residence in New York, as Plaintiff acknowledges by only "assuming" that he worked in New York. (*See id.* at 10.) In any event, Plaintiff may not rely on a LinkedIn profile to establish jurisdiction, as such an online profile is hearsay and does not qualify as admissible evidence. *See Moneygram Payment Sys., Inc. v. Consorcio Oriental, S.A.*, No. 05 Civ. 10773 (RMB), 2007 WL 1489806, at *3 n.5 (S.D.N.Y. May 21, 2007) (noting in connection with Rule 12(b)(2) motion that "[o]ther than his deposition testimony, [defendant] has offered no (admissible) jurisdictional evidence").

additional "activities of substance."[14]  The Viceroy Defendants' only concrete connections to New York are the use of a New York-based company to "create, maintain and/or design software, websites, or on-line booking programs accessible to the general public," (Pl.'s Viceroy Opp., Ex. D., Interrogatory No. 1), and their part in a group insurance policy that is issued by a company located in New York, (Viceroy Defs.' Mem., Ex. E).  Indeed, as stated above, the Viceroy Defendants do not have any of the standard ties to this forum, as they do not have any office, bank accounts, property, identified employees, affiliated companies, or agents in New York.  (*See* Pl.'s Viceroy Opp., Ex. D, Interrogatory Nos. 2 & 3.)  To the contrary, the Viceroy Hotel Group's main ties are to California, the Viceroy Anguilla is a private business located in Anguilla and has an office in Connecticut, and the corporate owner of the Viceroy Anguilla was formed in Delaware and is registered to do business in Florida.  (Viceroy Defs.' Mem. ¶¶ 32–33; Compl. ¶¶ 4, 5; Pl.'s Viceroy Opp., Ex. D, Interrogatory No. 13–14.)  Therefore, the Viceroy Defendants' connections to New York fail to establish the "continuous and systematic" contact necessary to assert general jurisdiction under § 301, let alone to show that the Viceroy Defendants are "at home" in New York such that the strict mandates of due process would be satisfied.  *See Landoil Res. Corp.*, 918 F.2d at 1045–46 (thirteen sporadic business trips to New York and placing of insurance business in New York insufficient) (citing case law); *Enderby v. Secrets Maroma Beach Riviera Cancun*, No. 10-CV-1015 (JFB)(WDW), 2011 WL 6010224, at *1–2 (E.D.N.Y. 2011) (that print ads were placed in New York by travel agents in New York

---

[14] To be certain, Plaintiff was unable to ascertain the amount of revenue the Viceroy Defendants generate from New York.  Although the amount of revenue generated from New Yorkers may otherwise be relevant to whether any substantial solicitation occurred, *see Holey Soles Holdings, Ltd. v. Foam Creations, Inc.*, No. 05 Civ. 6939 (MBM), 2006 WL 1147963, at *5 (S.D.N.Y. May 1, 2006) ("In making the initial determination of whether solicitation is 'substantial and continuous,' courts 'frequently look to the percentage of a company's revenue attributable to New York business.'" (citation omitted)), the Viceroy Defendants clearly indicated that they did not have any method to make this calculation, (Pl.'s Viceroy Opp., Ex. D, Interrogatory Nos. 4, 5, 17).

and one New York agent booked rooms at the hotel was, absent the traditional indicia, insufficient to confer general jurisdiction); *Hinsch*, 153 F. Supp. 2d at 212–13 (although the defendants placed an advertisement in a publication and allowed a local travel agent to book rooms, the court could not find a "corporate presence within the meaning of Section 301" where the defendants had no office, property, bank accounts, or employees in New York) (collecting case law).

Plaintiff's argument that the Viceroy Defendants are subject to general jurisdiction also relies on the purported maintenance by the Viceroy Defendants of a "highly interactive website." (Pl.'s Viceroy Opp. 8.) However, it is widely acknowledged that "the fact that a foreign corporation has a website accessible in New York is insufficient to confer jurisdiction under CPLR § 301." *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 230 F. Supp. 2d 376, 383 (S.D.N.Y. 2002) (quoting *Spencer Trast Ventures v. Archos S.A.*, No. 01 Civ. 1169, 2002 WL 417192, at *6–7 (S.D.N.Y. 2002)) (collecting cases). Rather, the website must be "purposefully directed towards New York." *McCrann v. RIU Hotels S.A.*, No. 09 Civ. 9188 (CM), 2010 WL 5094396, at *4 (S.D.N.Y. Dec. 6, 2010) (existence of website accessible to New York residents was not "doing business" in New York where the website was "accessible to anyone with an Internet connection"); *Holey Soles Holdings, Ltd.*, 2006 WL 1147963, at *4–5 (explaining that the fact that a website is accessible in New York does not confer general jurisdiction "unless that website is purposefully directed toward New York," as a finding otherwise "would contravene the purposefully narrow reach and long-standing stringent application of C.P.L.R. § 301").

Plaintiff has not offered any evidence to show that the Viceroy Defendants' website is directed toward New York other than to state that a Viceroy New York hotel shares the same

website as other Viceroy hotels.  (Pl.'s Viceroy Opp. 8, 10.)  This is not enough.  *See Rodriguez*

*v. Circus Circus Casinos*, No. 00 Civ. 6559 (GEL), 2001 WL 21244, at *2 (S.D.N.Y. Jan. 9,

2001) (noting developing trend supports finding that "the accessibility of [a defendant's] website

to New York residents (and their ability to make a reservation through it) cannot be sufficient to

establish general jurisdiction over [that defendant]"); *see also Brown*, 2003 WL 21496756, at *4.

Plaintiff's citation to case law in support of personal jurisdiction over a defendant who

maintains an interactive website is inapposite.  (*See* Pl.'s Viceroy Opp. 8–9.)  For example, in

*Thomas Pub. Co. v. Indus. Quick Search, Inc.*, 237 F. Supp. 2d 489 (S.D.N.Y. 2002), there was

"substantial" solicitation of business in New York, including not only through the defendant's

interactive website, which listed "269 New York entities," but also by the defendant contacting

New York sales associates, attempting to get those New York sales associates to sell ads for it,

featuring more than 75 paid advertisers from New York, and having its agent visit New York on

a series of occasions to further its business interests.  *Id.* at 491; *see also In re Ski Train Fire in*

*Kaprun, Austra on Nov. 11, 2000*, 230 F. Supp. 2d at 382–84 (in addition to an interactive

website offering a virtual salesperson and sales conducted in New York over the Internet, the

defendant was listed on the New York Stock Exchange and conducted related activities in New

York, bought a New York company, used a New York law firm to register 7,000 patents,

employed a press contact in New York, and sued in New York).  The other cases cited by

Plaintiff are also readily distinguishable because each of those courts addressed the use of

interactive websites in the context of CPLR § 302.  *See Uebler v. Boss Media, AB*, 363 F. Supp.

2d 499 (E.D.N.Y. 2005) (interactive website discussed in the context of CPLR § 302); *Kaloyeva*

*v. Apple Vacations*, 21 Misc. 3d 840 (N.Y. Civ. Ct. 2008) (same); *Blissworld v. Kovack*, 2001

N.Y. Misc. LEXIS 547 (N.Y. Sup. Ct. July 9, 2001) (same).

Therefore, personal jurisdiction under Section 301 has not been demonstrated, and there is no general jurisdiction over the Viceroy Defendants.

## 2. Specific Jurisdiction

Plaintiff argues that I have specific jurisdiction over the Ricketts Defendants and the Viceroy Defendants under subsection (a)(1) of New York's long-arm statute, CPLR § 302, which provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:  1. transacts any business within the state or contracts anywhere to supply goods or services in the state."  (Compl. ¶ 6; Pl.'s Viceroy Opp. 11–12; Pl.'s Ricketts Opp. 14–16.)   Plaintiff does not contend that §§ 301(a)(2), (a)(3) or (a)(4) apply.  (*See* Pl.'s Viceroy Opp. 11–12; Pl.'s Ricketts Opp. 14–16.)

The law in the Second Circuit is clear.  "Section 302(a)(1) is typically invoked for a cause of action against a defendant who breaches a contract with plaintiff or commits a commercial tort against plaintiff in the course of transacting business or contracting to supply goods or services in New York."  *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 764 (2d Cir. 1983) (internal citations omitted); *see also Chloe v. Queen Bee of Beverley Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010) (explaining, in response to the defendant's argument that Section 302(a)(1) applies more readily to contract claims as opposed to trademark infringement actions, that trademark infringement is "just such a commercial tort" mentioned in *Beacon*).  The Viceroy Defendants did not have a contract with Plaintiff, nor can they be said to have committed a commercial tort in New York.  Plaintiff's assertion of specific jurisdiction over the Viceroy Defendants can therefore be rejected on this basis alone.  However, in addition, specific jurisdiction is lacking because it is clear that any business transacted by the Viceroy Defendants in New York did not result in Plaintiff's cause of action.  *See McGowan*, 437 N.Y.S.2d at 645

("Essential to the maintenance of a suit against a nondomiciliary under CPLR 302 (subd [a], par 1) is the existence of some articulable nexus between the business transacted and the cause of action sued upon . . . it is this basic requirement that differentiates the long-arm authority conferred by CPLR 302 (subd [a], par 1) from the more traditional authority of the New York courts under CPLR 301.").  Plaintiff's only suggestion in support of there being a nexus is a strained logical connective:  that if the Viceroy Defendants had an active marketing program targeting New York in order to grow their reputation, it would follow that Plaintiff's decision to accept Minette's offer for a tour of the Viceroy was the product of the Viceroy Defendants' business activities.  (Pl.'s Viceroy Opp. 12.)  As a factual matter, beyond her argument in the opposition, Plaintiff has not offered any facts, by affidavit or otherwise, to support this speculative contention, and therefore I reject Plaintiff's argument in support of a causal connection here.  In any event, Plaintiff cites no case law to support her position that specific jurisdiction would exist in such a case, and her argument must be rejected, particularly in light of the requirement there be a "*substantial* relationship" between a plaintiff's claims and the alleged business transactions occurring in New York.  *See Bracken*, 2016 WL 7496735, at *3; *see also Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103, 104 (2d Cir. 2006) (explaining that "[a] connection that is 'merely coincidental' is insufficient to support jurisdiction" and that the events giving rise to the injury must have more than a "tangential relationship" to the defendant's contacts with New York) (collecting cases).  Indeed, to find otherwise would be contrary to the reasoning behind numerous cases that have held that even a plaintiff's reservation on a particular hotel's website will not itself give rise to specific jurisdiction related to an injury later occurring at that same hotel.  *See, e.g.*, *Cummings v. Jai Ambe, Inc.*, No. 11-CV-8213 (ER), 2013 WL 620186, at *3 (S.D.N.Y. Feb. 13, 2013) (holding

that plaintiff's injuries arose from negligent conduct of defendants in Missouri, and not from booking of hotel reservation in New York over Internet); *Rodriguez*, 2001 WL 21244, at *3 (finding personal jurisdiction lacking where "personal injuries at the heart of [the] lawsuit arose" from the defendant's negligent conduct abroad and not from the making of a hotel reservation).

Plaintiff has failed to make a prima facie showing of personal jurisdiction over the Viceroy Defendants under either § 301 or § 302; therefore, the Viceroy Defendants' motion to dismiss under Rule 12(b)(2) is granted, and I need not consider their alternative argument that they are not liable under a respondeat superior theory.

### B. *Personal Jurisdiction Over the Ricketts Defendants*

#### 1. General Jurisdiction

As with the Viceroy Defendants, it is patently clear that Plaintiff has not shown any of the traditional indicia necessary to establish the existence of general jurisdiction over the Ricketts Defendants. Indeed, it is not disputed that Ricketts & Associates is located, incorporated, licensed, registered, and has its principal place of business in Anguilla, and claims it has no business-related activity outside of Anguilla. (Aronauer Decl., Ex. D, Interrogatory No. 13; Ricketts Decl. ¶¶ 5–6, 11.) Ricketts & Associates is not licensed or authorized to do business in New York, and has no office, employees, or bank accounts in New York. (Ricketts Decl. ¶¶ 7–10.) Similarly, the Anacaona is located in Anguilla. (Ricketts Defs.' Mem. 2.) Notwithstanding these facts, Plaintiff argues that general jurisdiction over the Ricketts Defendants is appropriate because: (1) the "solicitation plus" rule applies, such that "very little more is necessary to a conclusion of 'doing business,' " (Pl.'s Ricketts' Opp. 10 (citing *Aquascutum of London, Inc. v. S.S. American Champion*, 426 F.2d 205, 211 (2d Cir. 1970))); and (2) the Ricketts Defendants use a "highly interactive website," which was used by Plaintiff to

make her reservation, (*id.* at 10, 13–14). Plaintiff also points to the following alleged facts as supporting general jurisdiction: (1) roughly thirteen percent of the Anacaona's reservations comes from New York, (*id.* at 11); (2) the Ricketts Defendants employ a public relations firm that is located in New York, (*id.*); (3) the Ricketts Defendants' alleged former director of sales and marketing, Frank Pierce, is purportedly a New York resident who worked from a home office or otherwise made trips to New York to promote the Anacaona, including a New York travel show, (*id.* at 11–12); and (4) the Anacaona was featured in various publications or television networks, including an online publication from Travel and Leisure, which is a New York-based publication, a promotion on the ABC News website, which is a New York-based television network, and the Today Show, which is filmed in New York and broadcast on NBC, a New York-based television network, (*id.* at 12).

Notably, many of the facts assumed to be true by Plaintiff were proven incorrect, stated without the necessary qualifications, or otherwise mitigated through jurisdictional discovery and declarations submitted by the Ricketts Defendants. As an initial matter, although the Ricketts Defendants do contract with a New York-based public relations firm, a preliminary proposal for the relevant public relations campaign lists as its "target audience" "[e]veryone who will listen but with an emphasis on travelers in the Northeast United States plus the Atlantic Coast states, the Midwest states, Texas and Eastern Canada." (Aronauer Decl., Ex. D, Interrogatory Nos. 1, 2, 3, 7, 10 & at 45.) Additionally, with respect to Pierce's alleged ties to the Ricketts Defendants and New York, the Rickett Defendants demonstrate that Pierce was not an employee of the Anacaona, did not live in New York or have a home office here, worked for other hotels at the same time he worked for the Anacaona as an independent contractor, and did not focus on New York in his work for the Anacaona. (Pierce Reply Decl. ¶¶ 2, 3, 5, 7.) Although Pierce attended

a New York travel show, he also attended one in Washington, D.C., and the article addressing both shows includes a quote from the Anguilla Director of Tourism regarding Anguilla looking forward to continuing its strong presence in the Northeast generally with more events later that year. (Pl.'s Ricketts Opp., Ex. G.)[15] Finally, there is no indication that the Ricketts Defendants were involved in any media placements, nor did the cited media specifically focus on the Anacaona.

Once the above facts are taken into account, Plaintiff can only demonstrate the following ties between the Ricketts Defendants and New York: (1) the Ricketts Defendants' use of a New York-based public relations firm that did not specifically target New York; (2) the presence of their independent contractor at a single trade show, not to the exclusion of attending other trade shows in other locations; (3) a New York-based travel magazine and New York-based media outlets describing or mentioning the Anacaona with no evidence of the Rickett Defendants' involvement in these media events; and (4) 12.8 percent of reservations in 2015 that came from New York. Therefore, to exercise general jurisdiction over the Ricketts Defendants, I must find that these facts, together with the alleged "highly interactive website," satisfy § 301.

As explained above, the mere fact that a website is highly interactive, even to the point of allowing users to make reservations and interact with a foreign hotel, does not itself subject a defendant to general jurisdiction in New York absent proof that the website is purposefully directed toward New York. *See In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 230 F. Supp. 2d at 383 (collecting cases); *Enderby*, 2011 WL 6010224, at *13 (collecting cases). Nothing in the record suggests that the Anacaona's website was purposefully directed toward

---

[15] Plaintiff also points to a photograph of Pierce in an advertisement for a television program on WeTV, a New York-based network; however, the article did not mention or otherwise thank the Anacaona for any involvement in the program, even though it thanked other hotels. (Pl.'s Ricketts Opp., Ex. J.)

New York, and Plaintiff does not even argue as much in her opposition.  (*See* Pl.'s Ricketts Opp. 13–14.)

Thus, general jurisdiction will only exist if the facts proffered by Plaintiff establish general jurisdiction under a "solicitation plus" theory.  *See Overseas Media, Inc.*, 407 F. Supp. 2d at 569 (quoting *Landoil Res. Corp.*, 918 F.2d at 1044); *see also Holey Soles Holdings, Ltd.*, 2006 WL 1147963, at *5; *but see Aquascutum of London, Inc.*, 426 F.2d at 211 ("[O]nce solicitation is found in any substantial degree very little more is necessary to a conclusion of 'doing business.'").  Other than the percentage of reservations generated from New York, the Ricketts Defendants' tenuous connections to New York do not justify a finding of even minimal solicitation.  *Compare Landoil Res. Corp.*, 918 F.2d at 1045–46 (thirteen sporadic business trips to New York insufficient to establish "substantial and continuous" solicitation); *Hinsch*, 153 F. Supp. 2d at 213 (placement of an advertisement was "nothing more than mere solicitation, which cannot be relied upon to form the basis of jurisdiction under Section 301"); *Schenck v. Walt Disney Co.*, 742 F. Supp. 838, 841 n.1 (S.D.N.Y. 1990) (solicitation of business through advertising and brochures, hiring of athletes at major sporting events televised in the New York area to advertise for Walt Disney World, and recruiting of New York-based students, "do not amount to anything more than mere solicitation by WDW"), *with Thomas Pub. Co.*, 237 F. Supp. 2d at 491 ("substantial" solicitation found where defendant's interactive website listed 269 New York entities and defendant contacted New York sales associates, attempted to get those associates to sell ads for them, featured more than 75 paid advertisers from New York, and instructed their agent to visit New York multiple occasions to further business interests).

However, that 12.8 percent of the Anacaona's reservations in 2015 were New York-based is worthy of further analysis since, at least in the context of revenue, courts in this Circuit have

implied that this percentage may be considered "substantial sales." Specifically, courts in this Circuit have routinely held that revenue percentages of five percent or less attributed to New York customers are insufficient to establish a substantial portion of a defendant's sales such that a finding of "substantial" solicitation is warranted, whereas at least one court in this Circuit has found that a revenue percentage of twenty percent did demonstrate "substantial" sales. *See Schottenstein v. Schottenstein*, No. 04 Civ. 5851 (SAS), 2004 WL 2534155, at *11 & n.114 (S.D.N.Y. Nov. 8, 2004) (collecting case law).[16] Although 12.8 percent may constitute substantial sales, it is not clear that these sales resulted from any targeted solicitation by the Ricketts Defendants, whether on the alleged interactive website or as a result of other efforts. *See C.A., Inc. v. Stonebranch, Inc.*, No. 12-CV-5988 (SJF), 2014 WL 6460818, at *6 (E.D.N.Y. Nov. 17, 2014) (explaining that the sales "resulting from solicitation in New York" must rise to the level of substantial solicitation, and that revenue is relevant to determining "whether solicitation is substantial and continuous") (internal quotation marks omitted); *Overseas Media, Inc.*, 407 F. Supp. 2d at 569 ("Courts will frequently look to the percentage of a company's revenue attributable to New York business *in determining whether solicitation is substantial and continuous*.") (emphasis added); *Schottenstein*, 2004 WL 2534155, at *11 (noting specifically that it was the website that enabled M/I homes to generate 20 percent of its revenues from New York residents). However, even assuming that the revenue resulted from the solicitation by the Ricketts Defendants, Plaintiff still has not satisfied the additional requirement that "a 'defendant

---

[16] Although the relevant case law focuses almost exclusively on revenue generated, I do not distinguish sharply between revenue and reservation percentage in considering this issue. However, I do note that in at least a substantial portion of the case law analyzing revenue in the context of the "solicitation plus" theory, the factual circumstances of the cases were notably different, in that they involved the actual sale of products in New York. *See, e.g., Bodum U.S.A., Inc. v. Hantover, Inc.*, No. 11 Civ. 8702 (SAS), 2012 WL 1309176, at *4 (S.D.N.Y. Apr. 16, 2012) (seller of knife blocks); *Garcia v. Nationwide Mach. Sales*, No. 08 CV 4167 (SJF), 2009 WL 2992574, at *3 (E.D.N.Y. Sept. 16, 2009) (seller of industrial equipment); *Indem. Ins. Co. of N. Am. v. K-Line Am., Inc.*, No. 06 Civ. 0615 (BSJ), 2007 WL 1732435, at *5 (S.D.N.Y. June 14, 2007) (seller of piano goods).

engages in other activities of substance in the state.'" *Biro v. Nast*, No. 11 Civ. 4442 JPO, 2012 WL 3262770, at *6 (S.D.N.Y. Aug. 10, 2012) (quoting *Landoil Res. Corp.*, 918 F.2d at 1043). Those additional activities have involved, but do not necessarily need to involve, "some financial or commercial dealings in New York . . . or the defendant holding himself out as operating in New York, either personally or through an agent." *Id.* (citation omitted) (alteration in original). The insubstantial ties between the Ricketts Defendants and New York do not fulfill the "second prong" of the "solicitation plus" theory. Therefore, I find that the Ricketts Defendants are not "doing business" in New York, and refuse to subject them to general jurisdiction in this Court.

### 2. Specific Jurisdiction

Plaintiff's assertion that I have specific jurisdiction over the Rickett Defendants is premised on her claim that the Rickett Defendants transacted business over their website, including by contracting with Plaintiff, and that Plaintiff's subsequent decision to be a guest at the Anacaona was based on her exposure to the Rickett Defendants' targeted publicity in New York. (Pl.'s Ricketts Opp. 15–16.) Plaintiff's argument is precluded by the myriad courts in this Circuit to find that a plaintiff's reservation on a hotel website will generally not give rise to specific jurisdiction over the defendant hotel based on a claim premised on the negligent conduct of that defendant in the foreign jurisdiction. *See, e.g.*, *Cummings*, 2013 WL 620186, at *3; *Rodriguez*, 2001 WL 21244, at *3; *Hinsch*, 153 F. Supp. 2d at 213. Although Plaintiff cites to the Second Circuit's decision in *Chloe* to support her argument that the transaction of business over a website can support specific jurisdiction, the factual circumstances in *Chloe* are readily distinguishable, as they involved the sale of fifty two Chloe handbags into New York that allegedly infringed on a trademark, and thus were obviously related to Plaintiff's claims for trademark infringement. *See Chloe*, 616 F.3d at 170–71. In fact, the Second Circuit in *Chloe*

specifically explained that this category of claim fell under the causes of action for which Section 302(a)(1) is typically involved, as it involved a "*commercial tort* against plaintiff in the course of transacting business or contracting to supply goods or services in New York." *Id.* at 171 (citation omitted). Such circumstances are simply not present here.

As I find that general and specific jurisdiction over the Rickett Defendants would be improper, the Rickett Defendants' motion to dismiss under Rule 12(b)(2) is granted, and I do not consider their argument that the forum non conveniens doctrine also applies.

## V.     <u>Conclusion</u>

For the foregoing reasons, the Viceroy Defendants' and the Rickett Defendants' respective motions to dismiss under Rule 12(b)(2) are GRANTED with leave for Plaintiff to refile in a court having personal jurisdiction over Defendants. The Clerk of Court is respectfully directed to terminate the open motions at Documents 41 and 51 and close the case.


SO ORDERED.

Dated:  September 25, 2017
        New York, New York

Vernon S. Broderick
United States District Judge